IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL DURANDO,<br>**Plaintiff,**<br><br>v.<br><br>THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA AND MARCELO KAZANIETZ,<br>**Defendants.** | CIVIL ACTION<br><br><br><br><br>NO. 21-756 |

## MEMORANDUM OPINION

Plaintiff Dr. Michael Durando ("Plaintiff") was once employed by the University of Pennsylvania ("UPenn") as a Postdoctoral Fellow in the laboratory of Dr. Marcelo Kazanietz. During his employment, Plaintiff felt forced to spend his own work hours helping Kazanietz's wife, Dr. Mariana Cooke, apply for residency positions and came to resent it. The trio became embroiled in personal conflict. Meetings took place and fiery communications were exchanged. Among other things, Plaintiff complained to UPenn that Kazanietz was compelling Plaintiff to perform non-research-related activities in violation of the requirements underlying the federal grant supporting his fellowship. Eventually, Plaintiff withdrew the letters of recommendation he had written for Cooke and resigned from UPenn, an event he alleges amounted to constructive termination.

Plaintiff now sues Kazanietz for defamation under Pennsylvania's Uniform Single Publication Act, 42 Pa. C.S. §§ 8341-8345.[1] Kazanietz has filed a Motion for Summary

---

[1] Plaintiff also asserts claims against the Trustees of the University of Pennsylvania, alleging breach of contract as well as retaliation under the Pennsylvania Whistleblower Law, 43 Pa. Stat. Ann. § 1421 *et seq.* ("PWL"), the False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Stat. Ann. § 951, *et seq.* ("PHRA"). This Opinion addresses only Count VI of the Amended Complaint, which sets forth Plaintiff's defamation claim against Kazanietz.

1

Judgment pursuant to Federal Rule of Civil Procedure 56.  For the reasons that follow, Kazanietz's Motion will be granted.

I.  **FACTUAL BACKGROUND**

The beginning of the story is simple enough.[2]  Kazanietz is a Professor of Pharmacology who heads up a laboratory at UPenn.  From February 2019 to February 2020, Plaintiff worked as a postdoctoral fellow in Kazanietz's lab, a position funded by a research training grant from the National Institutes of Health.[3]

The trouble began in the summer of 2019 when Cooke, a lab employee and Kazanietz's wife, prepared to submit applications to residency programs around the country.  Plaintiff had gone through the process before, so he talked to Kazanietz and Cooke about her applications.  He wrote letters of recommendation for Cooke and emailed residency program directors on her behalf.  Although the Parties dispute how much time Plaintiff spent on Cooke's applications and whether he was helping her voluntarily or not, it is clear that his friendly relationship with Cooke became tainted by resentment.  Plaintiff eventually complained to Kazanietz that his work on Cooke's residency applications was interfering with his research.

Over the course of 2019, the tension between Plaintiff, Kazanietz, and Cooke continued to mount and working conditions suffered.  Plaintiff met with his Administrative Director and told her that, by compelling him to spend so much time on Cooke's applications, Kazanietz was violating the requirements of Plaintiff's federal grant.  Plaintiff also told her that he believed Kazanietz had discriminated against a colleague by terminating her after learning of her

---

[2] Except where otherwise indicated, the facts recited below are undisputed.

[3] There is some confusion in the record as to whether this grant funded Plaintiff's fellowship in whole or in part, but the distinction is not material to Kazanietz's Motion.

pregnancy.  Kazanietz denies both accusations.  He asserts—and Plaintiff denies—that Plaintiff neglected laboratory mice and that he argued with Cooke about a lab freezer.  And Kazanietz reportedly told Linda Nace, Director of Physical Operations in the Department of Systems Pharmacology and Translational Therapeutics, that Plaintiff had made another lab employee feel uncomfortable by invading her personal space.

Matters came to a head in February 2020, but the Parties have slightly different stories about what happened.  Cooke testified that, at a critical juncture in the residency applications process, Plaintiff withdrew the letters of recommendation he had written in her support.  Plaintiff specifically denies that he withdrew the letters.  Instead, he offers two renditions of the story, one in which he "add[ed] an official letter" as a record of his "stance on her application" (*i.e.*, that he "no longer recommended her"), and one in which he "replace[d] [] his original letters of recommendation with blank letters of recommendation."  Plaintiff also denies that this act had any effect on Cooke's applications, because he asserts that he did it after the residency programs had chosen their applicants.  It is not immediately apparent what the practical difference is between these disputed narratives, but in any event, Plaintiff's act ignited a firestorm of texts and emails in which Kazanietz and Cooke expressed their outrage.

## II.  LEGAL STANDARDS

To prevail at summary judgment, "the movant must show that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Nat'l State Bank v. Fed. Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1992) (quoting Fed. R. Civ. P. 56(c)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (emphasis in original).  The movant bears the initial burden of identifying those portions of the record "it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Then, the non-moving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.

"[C]ourts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'"  *Scott v. Harris*, 550 U.S. 372, 378 (2007) (second alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*)).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on summary judgment.  *Anderson*, 477 U.S. at 255.

### III.    DISCUSSION

In Pennsylvania, a defamation claim has seven elements: "(1) The defamatory character of the communication. (2) Its publication by the defendant. (3) Its application to the plaintiff. (4) The understanding by the recipient of its defamatory meaning. (5) The understanding by the recipient of it as intended to be applied to the plaintiff. (6) Special harm resulting to the plaintiff from its publication. (7) Abuse of a conditionally privileged occasion."  *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 424 (Pa. 2015) (quoting 42 Pa. C.S. § 8343(a)).

"Procedurally, a trial court at the outset should decide whether a statement is capable of a defamatory meaning."  *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014).  "A statement is defamatory if 'it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'"  *Id*. at 136 (quoting *Tucker v. Fischbein*, 237 F.3d 275, 282 (3d Cir. 2001)).  The determination of

whether a statement is capable of defamatory meaning is made in light of the "full context" of the communication. *Tucker v. Phila. Daily News*, 848 A.2d 113, 124 (Pa. 2004) (quoting *Thomas Merton Ctr. v. Rockwell Int'l Corp.*, 442 A.2d 213, 216 (Pa. 1981)).

Before delving into the merits of Kazanietz's Motion, it is worth pausing to consider one of the procedural idiosyncrasies that bedevil this case. Plaintiff's defamation claim rests on three statements made by Kazanietz—two contained in emails from Kazanietz to third parties, and one found in the deposition testimony of a witness. None of these statements are identified in the Complaint or the Amended Complaint. It appears that Plaintiff had no idea what statements would support his defamation claim until discovery, and yet he never sought to file a second amended complaint, nor does it appear that he disclosed them to Kazanietz at any point during discovery. Upon receipt of a written discovery request from Kazanietz seeking this information, Plaintiff responded "[s]ee responsive documents produced herewith." Because Plaintiff unveiled these statements for the first time in opposition to summary judgment, Kazanietz's Motion for Summary Judgment is based on guesswork about what statements might be wielded against him.

As a result of these procedural acrobatics, Kazanietz's Motion argues that, by not identifying these statements before, Plaintiff has failed to state a claim for defamation. But instead of citing to Federal Rule of Civil Procedure 12(b)(6), the source of this defense, he relies on Federal Rule of Civil Procedure 56 and the summary judgment standard. Kazanietz sheds no light on how the Court should analyze a Rule 12(b)(6) defense raised within a Rule 56 motion, nor does he cite to binding legal authorities permitting him to raise a 12(b)(6) defense at summary judgment. *See* Fed. R. Civ. P. 12(h)(2) (the defense of failure to state a claim upon which relief can be granted may be raised "(A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial.").

As the Court will grant Kazanietz's Motion on other grounds, his argument that Plaintiff failed to state a claim will not be addressed. The Parties' competing arguments as to each allegedly defamatory statement are considered in turn below.

### A. The February 22 Email

The first allegedly defamatory statement is found in an email sent by Kazanietz on February 22, 2020 to his wife and four colleagues including Dr. John Wherry, the Chair of the Department of Pharmacology:

> In a state of shock and with great sadness I have to let you know that my wife received a few minutes ago an Email from the AAMC indicating that Michael Durando uploaded new letters of recommendation for her residency applications, for the programs she had interviewed, just before the Match. In other words, he ruined my wife's career, my family, and the future of our 3 kids. This was done 5 days before the residency programs make their ranking of candidates.

Plaintiff contends that the statement "he ruined my wife's career, my family, and the future of our 3 kids" is defamatory. Kazanietz contends that it is non-actionable opinion.

"[P]ure opinions cannot be defamatory." *McCafferty v. Newsweek Media Grp., Ltd.*, 955 F.3d 352, 357 (3d Cir. 2020). "Under the First Amendment, opinions based on disclosed facts are absolutely privileged, no matter how derogatory they are." *Id.* (internal quotation marks omitted) (quoting *Braig v. Field Commc'ns*, 456 A.2d 1366, 1373 (Pa. Super. 1983)). "That holds true even when an opinion is extremely derogatory," because when the statement "discloses the underlying facts, readers can easily judge the facts for themselves." *Id.*

In this communication, Kazanietz sets out the underlying facts—that Plaintiff uploaded new letters of recommendation for his wife's residency applications just before the Match—immediately before stating his opinion—that Plaintiff "ruined my wife's career, my family, and the future of our 3 kids." The interceding phrase "[i]n other words" makes this connection

6

explicit by signaling that the prophesied ruination of careers, families, and futures is based on the previously-stated fact that Plaintiff uploaded new letters of recommendation. Because the email discloses the facts supporting the opinion, the recipients of this email could "easily judge the facts for themselves," rendering the statement "absolutely privileged." *McCafferty*, 955 F.3d at 357.

### B. The February 23 Email

The second allegedly defamatory statement is contained in an email sent by Kazanietz on February 23, 2020 to Wherry and another colleague, stating:

> Dear John: thanks for calling me today.
>
> It was very worrisome to find out that this situation is more delicate that one would have predicted. Even though Mariana and I reacted to a barbarous and criminal aggression after midnight on Saturday, after we found that Michael was sabotaging her residency application, the issue here is that this person attacked me and my family and placed us in a terrible time-sensitive situation in which my wife's professional career is now at very high risk. This was done just 4 days before the deadline for ranking candidates. Our reaction was personal towards a direct attack against us, which has nothing to do with the institution by any means.

Kazanietz argues that the email's references to the prior phone call between Kazanietz and Wherry, and to the "act that occurred on February 22, 2020,"[4] constitute a disclosure of the facts on which the rest of the email is based, rendering it non-actionable opinion.

Contrary to Kazanietz's assertion, this email makes no disclosure of the facts underlying his opinions. While Wherry may be presumed to have knowledge of the facts impliedly referenced in this email, because he had received the previous email sent on February 22, nothing suggests that the other recipient was in the know. Therefore, these statements cannot be

---

[4] This phrase is used by Kazanietz in his brief but is not found in the email itself. It appears to be a reference to Plaintiff's withdrawal and/or replacement of his letters of recommendation.

7

set aside as non-actionable opinion. *See Valjet v. Wal-Mart*, 2007 WL 4323377, at *7 (E.D. Pa. Dec. 11, 2007) (statement was not proven to be opinion because defendant did not show that the underlying facts "were true and known to all" its auditors).

However, the statements in the February 23 email are non-actionable for another reason: the law affords no liability for "colorful language" or "catchy phrases or hyperbole." *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972 (3d Cir. 1985). Nor does it find fault with "vigorous epithet[s]" or the "vulgar name-calling [] frequently resorted to by angry people." *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 187-88 (3d Cir. 1999) (citations omitted). Kazanietz's characterization of certain conduct as "barbarous" falls into this category. *See Barbarous*, Merriam-Webster, https://www.merriam-webster.com/dictionary/barbarous (last visited June 15, 2022) (defining "barbarous" as: "uncivilized"; "lacking culture or refinement: Philistine"; "characterized by the occurrence of barbarisms" or "mercilessly harsh or cruel"). So do his vague statements that Plaintiff "sabotaged" his wife's applications and "attacked" his family, placing her career at "very high risk." *See Sabotage*, Merriam-Webster, https://www.merriam-webster.com/dictionary/sabotage (last visited June 15, 2022) (defining "sabotage" as "destruction of an employer's property"; "destructive or obstructive action carried on by a civilian or enemy agent to hinder a nation's war effort"; "an act or process tending to hamper or hurt"; or "deliberate subversion"); *Attack*, Merriam-Webster, https://www.merriam-webster.com/dictionary/attack (last visited June 15, 2022) (defining "attack" as "to set upon or work against forcefully"; "to assail with unfriendly or bitter words"; or "to begin to affect or to act on injuriously"). Nor is Kazanietz's allegation of "criminal aggression" defamatory, because such a general assertion is "reasonably understood as a vigorous and hyperbolic rebuke, but not a specific allegation of criminal wrongdoing." *Beverly Enters., Inc.*, 182 F.3d at 188 (statement

that "you people at [company] are all criminals" was "incapable of a defamatory construction").

Though no doubt offensive to Plaintiff, "the law of defamation does not extend to mere insult." *Id*. These kinds of vague, exaggerated accusations are simply not such as to "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'" *Graboff*, 744 F.3d at 135. The reader would recognize them for what they are: "non-defamatory rhetorical hyperbole." *Remick v. Manfredy*, 238 F.3d 248, 262 (3d Cir. 2001) (internal quotation marks omitted).

### C. The Statement Made to Linda Nace

The third allegedly defamatory statement is taken from the deposition testimony of Linda Nace. Nace testified that she "heard" from Kazanietz that Plaintiff "made a female or two uncomfortable in the lab" and would "go up behind the individual in the lab and lean over them and just be too close to them."[5] Although Nace referenced "a female or two," the Parties mention only one woman: Dr. Nilufar Rahimova. Kazanietz argues that Plaintiff's defamation claim fails because he has not made out the element of "special harm." 42 Pa. C.S. § 8343(a)(6) (plaintiff must prove "[s]pecial harm resulting to the plaintiff from [the communication's] publication.").

It is not clear whether the statement allegedly made by Kazanietz to Nace was libel or slander. Libel is "[a] method of defamation expressed by print, writing, pictures, or signs. Slander, broadly, is usually understood to mean oral defamation." *Agriss v. Roadway Exp., Inc.*, 483 A.2d 456, 469 (Pa. Super. 1984) (internal citation and quotation marks omitted). Although

---

[5] Although it is uncertain whether Plaintiff may rely on Nace's testimony to establish his defamation claim at summary judgment, *Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) ("[T]he rule in this circuit is that hearsay statements can be considered on a motion for summary judgment if they are *capable of being admissible at trial*.") (alteration in original) (emphasis in original) (citation omitted), Kazanietz did not raise this argument, and it is not for the Court to do so *sua sponte*.

9

the word "heard" generally means to be perceived by the ear rather than learned through a writing (and the Court would tend to define it that way), it could conceivably be used colloquially to mean that something was learned through a written communication. Nace testified that she "heard" about Rahimova's complaint from Kazanietz, but did not specify what she meant by the use of that word. In his Motion, Kazanietz argues that Plaintiff has not shown the damages required in a libel action, but that was before Kazanietz knew what statements were at play. Plaintiff does not distinguish between libel and slander at all. As the harm a plaintiff must demonstrate differs depending on the type of defamation, both will be analyzed.

The term "special harm" is a deceptive one. The Uniform Single Publication Act requires plaintiffs to show "special harm" as an element of any defamation claim. 42 Pa. C.S. § 8343(a)(6). But the Restatement (Second) of Torts, which has been adopted by Pennsylvania courts, provides that liability may attach for libel "although no special harm results from the publication." *Joseph v. Scranton Times, L.P.*, 89 A.3d 251, 261 (Pa. Super. 2014) (cleaned up) (emphasis added) (quoting Restatement (Second) of Torts § 569 (1977)), *reversed in part on other grounds by* 129 A.3d 404 (Pa. 2015). As explained by the Superior Court:

> This apparent contradiction is resolved by understanding that the term "special harm" has different meanings in the statute and Restatement. The term "special harm" as used in the statute has been interpreted to mean "general damages" which are proven upon a showing of "actual harm." "Actual harm includes 'impairment of reputation and standing in the community, . . . personal humiliation, and mental anguish and suffering.'"
>
> As used in section 569 of the Restatement, the "special harm" that a libel plaintiff need not show is actually "special damages." "Special damages" are "economic harm" or "pecuniary loss."

*Id*.; *see also* Restatement (Second) of Torts § 575, Comment b ("Special harm, as the words are used in this Chapter, is the loss of something having economic or pecuniary value.").

The upshot of all this is that, to prevail on a libel claim in Pennsylvania, a plaintiff need not show economic harm, but he must demonstrate actual harm.[6] *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 429 & n.10 (Pa. 2015); *Agriss*, 483 A.2d at 474. Specifically, the Pennsylvania Supreme Court held in a libel case that "proof of actual injury to a private plaintiff's reputation is a prerequisite to the recovery of damages for other actual injuries, including mental and emotional injuries." *Joseph*, 129 A.3d at 429.

Plaintiff makes no attempt to show actual reputational injury. Instead, he rests his case on a theory of hypothetical probabilities: that "it is impossible for a medical doctor or a scientific researcher not to suffer professional damage by the dissemination of false allegations of sexual harassment, given the extremely serious nature of the same." This theory falls short of the threshold established by the Pennsylvania Supreme Court in *Joseph*. Plaintiff must point to record evidence of *actual* reputational injury. *Id*. Without it, Plaintiff's evidence of "humiliation and mental anguish and suffering" is irrelevant, because such injuries cannot alone establish the special harm element of a defamation claim in Pennsylvania. *Id*. Plaintiff's evidence of special harm is therefore insufficient as a matter of law to support a libel claim.

More evidence of harm is needed if the defendant is accused of slander. To prevail in a slander case, the plaintiff must also prove special damages, that is, economic harm. *Burger v. Blair Med. Assocs., Inc.*, 964 A.2d 374, 379 (Pa. 2009) ("[A] plaintiff claiming slander must demonstrate special damages unless the statement in question constitutes slander *per se*."); *see*

---

[6] In some defamation cases, the doctrine of "presumed damages" permits the recovery of "compensatory damages without proving the defamatory statement caused actual harm." *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 341 (3d Cir. 2005). Kazanietz argues that this doctrine has no application here because Plaintiff has not shown actual malice, a prerequisite to any award of presumed damages in Pennsylvania. *Joseph v. Scranton Times L.P.*, 129 A.3d 404, 432 (Pa. 2015); *Geyer v. Steinbronn*, 506 A.2d 901 (Pa. Super. 1986). Plaintiff waived his response to this argument by failing to voice it. *See Duran v. Equifirst Corp.*, 2010 WL 936199, at *3 (D.N.J. Mar. 12, 2010) ("The absence of argument constitutes waiver in regard to the issue left unaddressed."); *United States v. Healy*, 2013 WL 1624310, at *1 (M.D. Pa. Apr. 15, 2013) ("[I]ssues not briefed are deemed waived.").

*also Franklin Prescriptions, Inc.*, 424 F.3d at 341-42 ("Under [*Walker v. Grand Central Sanitation, Inc.*, 634 A.2d 237 (Pa. Super. 1993)], a slander *per se* plaintiff is required to show 'general damages'—proof of harm to reputation or personal humiliation—but not 'special damages'—proof of actual monetary loss.").[7]  Plaintiff has advanced no evidence whatsoever of special damages.  Therefore, his claim of slander fails as a matter of law as well.

An appropriate order follows.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

**WENDY BEETLESTONE, J.**

---

[7] Plaintiff does not argue that what Kazanietz allegedly said to Nace constituted either libel *per se* or slander *per se*.